The opinion of the court was delivered by
Duncan, J.
If the verdict cannot be supported on each count, as it is entered generally, and the judgment is general, there must be a reversal.
It is alleged that the first count is defective;, that the plaintiff below showed no title to the money he claimed, for if he shows a good title however defectively he may have set it out, the verdict cures it. There might be vices in the declaration, fatal defects on special demurrer, but there is a healing virtue in a verdict which cures every thing but mortal diseases, all but radical constitutional defects. The declaration should state a title with convenient certainty, but if it is not demurred to and enough is set out to enable the court to give a judgment, though it is not stated with all the certainty the case admitted of, and which for the purpose of giving notice to the adverse party ought to have been done, the defect is cured by verdict, and the court on a writ of error will presume that all such omissions were supplied, and objections explained at the trial, and every thing proved, without which the action could not be supported; because a proper ground for such evidence was laid, and the want of precision in laying it, should be taken advantage of at the proper time. United States v. The Virgin, 1 Peters’ Rep. 7. Here a sufficient ground is laid, and however inartificial and irregular the structure may be, there is a solid foundation laid. The materials are all good, though very inartificially put together, and after a verdict-on the merits, the court will put them together. The want of consideration, and that the defendant’s agent is not stated to have been called on for payment, and refusal by him are the objections. This is not a declaration on the indorsement of a negotiable instrument nor a liability founded on an indorsement. The promissory note and the indorsement are mere inducements for a collateral promise. Demand on the drawer, and a notice to the indorser are not the grounds of the action.
It is in substance a declaration for money lent, very badly drawn, but getting forth substantially, that the plaintiff below lent the money to the defendant, and that the drawer absconded shortly before the note became due, and that the defendant acknowledging his liability to pay, had promised to pay. There is an allegation of an express promise to pay. The equity and good conscience would be a sufficient consideration to support the express promise. We must take it, it was expressly proved that there was a legal consideration sufficient to raise an implied one, as for money lent and advanced by the plaintiff to defendant, the note drawn for his accommodation, where he was the original debtor, and not in fact a surety, and on a declaration for money lent, the note would be evidence with the indorsement; it is not material whether negotiable or not. The declaration of the defendant before it became due *31 after the absconding of the drawer, that in law and justice he was liable to pay,. and had given instructions to his agent to pay it when it became due, would in such a case as this be evidence of a personal promise to pay, would support an allegation that he had promised to pay it. It would be a fair inference, — this debt is my own; I am bound to pay it, and have given instructions to my agent to pay it. It is. not evidence that the plaintiff accepted Kinsey as his paymaster, that this was to be the medium of payment, but evidence of Shaw’s express promise to pay it, and that he had made provision to meet it at maturity. The instruction to Kinsey to pay, was a circumstance to prove a promise by the defendant to pay. There was therefore no occasion to aver that Kinsey had refused to pay because there was no necessity to apply to him for payment; and on the pleas, he could have shown that the money had been paid by his agent to the plaintiff. Payment by his agent was payment by himself. The jury have negatived his plea of payment, and have found that he promised to pay. This debt being originally the debt of defendant, a bill taken from liis agent could be no extinction of it; and it is impossible to say that the debtor could be discharged under the circumstances by want of notice, like the drawee of a bill of exchange or indorser of a promissory note. (3 Cask v. Nace, 3 Cambp. 411.) There was contained in this declaration enough to raise an implied promise, and in Miles v. O’Hara, in the Court of Errors and Appeals, in 1807,JI Sm. L. 18, it was said this would be sufficient, though no express promise was stated; but hero is an express promise made by-the defendant below, that the debt should be paid, that is, that he would pay it. There is a sufficient consideration, (which is the gist of the action,) laid and found. The second error assigned is, that issues are not joined,, particularly that there is no replication to the plea of non assumpsit infra sex annos, and I will give the objection its full weight,.by admiffing that this plea is one which the general common replication vvould not meet, that he did assume within six years, for the plaintiff might have replied, that it was a case of merchants’ accounts, beyond sea, a trust, or a fraud not discovered within six years. And this might at one time and shortly before,our revolution haye been a fatal objection, and perhaps if there was no rule of court, making it the duty of the clerk to join the issue, it might in the opinion of some, still be a difficulty. But the effect of this rule was settled in Cooper v. Jordan, and after a trial and verdict, it cannot be sustained, for it makes no difference whether issue be, not taken on a plea or replication, the cause is as little at issue to the country in the one case as in the other. This is a most salutary and beneficial rule. All our pleas are but notes of pleas, and strictly inmaking up a record,' all the pleas with the similiter should be set out in full form, and it is in the power of any party to compel all the pleadings'to be in strict form and at length, As the plaintiff did not. choose to make any special replica *32 iion, and as the; defendant did not desire he should; and as it is made the duty of the clerk to put the cause to issue, (still reserving to the parties the alteration of the issue,) as both parties went to trial on the belief that it was done, and as defendant could not be taken by surprise, could not lose the benefit of a full defence, and as he himself waived the replication by desiring it to be put on the trial list, to be tried by a special jury, it would be a grievance to the plaintiff, a burden to the public, and a reproach to the administration of justice to walk again over the same ground. ‘If the defendant had asked a postponement of the cause, because it was not at issue, the court would have granted it, because it was contrary to the rules of court to put any case on the trial list not at issue. Had he been deprived of any advantage, precluded from any defence by the District Court, and excepted to their opinion, his case would have been a very different one.
Something has been said of the innovation in pleading, and of the uncertainty and insecurity of the administration of justice introduced by the rule of court, and which is unknown as is said in any other courts proceeding according to the course of the common law. If our courts had first set the example of wiping off this stain from the body of the law, it would have been no discredit to them. And if they did set the first example, it has been followed by other courts who adhere to the strict forms of pleading more tenaciously than we do; and even in England — in Westminster Hall, where the liberality of the courts has arrived at the same point, and issue to the country is now joined without a similiter. In Cooper v. Spencer, 1 Stra. 641, it was decided that a verdict did not cure the want of a similiter; but in Sayer v. Pococls, Cowp. 407., the want of the- similiter was aided after verdict. The argument to support it was, that the clerk, the paper book being returned, was bound to add the similiter, and every thing-necessary for the trial, and the defendant by going on to trial was precluded from taking the objection to the issue. Gilb. L. C. B. 152, 153. So here the clerk by the rule of court was enjoined to add the replication. But the great improver of the English jurisprudence, Lord Mansfield, and I give the whole of his opinion, said, “ One is ashamed and grieved, that such objections remain; they have nothing to do with the justice of the case," but only serve to entangle without being of the least aid in preventing irregularity. Without considering whether it is within the statute of jeofails or not, it is best to amend to avoid a writ of error. And there are three grounds, which satisfy me that it is in this case amendable. 1st, That it is an omission of the clerk. 2d, I will adopt the reasoning of Lord Coke, and construe, &c. to mean every matter necessary, and that ought to haye been expressed ; and 3d, By amending, the court only make that right, which the defendant understood to be so by going down to trial.” The last is a sound reason. The progress of the courts in granting such amendments.'
*33 or overlooking such defects aftei' verdict, is traced by Sergt. Williams in his note to Bennet v. Holbech, 2 Saund, 317. Independent of the rale of court, I give this only as my own opinion, that where the defendant has had the full benefit of his pleas on a trial, the want of a traverse is cured by the verdict, and in Westminster Hull, to which we are referred as a model, Ifeel some confidence in the researches I have made, such .objection would not now be listened to; the courts would make short work with it. Sir Matthew Hale considered an overforwardness in courts to give countenance to frivolous exceptions, though they make nothing to the true merits of the cause, whereby it often happened that causes are not determined according to their merits, but do often miscarry for inconsiderable omissions in pleading, as a just reproach. Sergeant Runnington, in his notes says, however just this may have been heretofore, it is not now in the least degree applicable; the court having been for many years, and that much to their honour, astute, to discountenance and reprove frivolous exceptions, and forward as much as possible the true merits of every cause. 1 H. H. Com. Lain, 305. The recent decisions of the Courts of Westmin-. ster Hell, are of no authority with us, but may be examined as instances of the progress of good sense; they are only mentioned as historical anecdotes. Where a defendant pleaded the genei’al issue, and the statute of limitations, and a verdict was found for the plaintiff on the first issue, and no notice taken of the last,’ after eri’or brought, and this*error assigned, the court allowed it to be amended by judges notes, on payment of costs; and where the record was made up, stating that the venire issued to try the issue between the parties, whereas, on one of the issues, that of' tender, neither of the parties had put themselves on the country, though on the plea of non assumpsit they had, the court refused to arrest the judgment. But the court haxre crept pn to this very point, for where the parties had gone down to trial upon a-plea which had not been traversed, the plaintiff xvfs permitted to amend by adding the traverse, and defendants motion in arrest of judgment was discharged. We are not strenuously to adhere to British precedents, or matters in pi’actice, prior to 4th of July, 1776, when their own courts have expressed their shame an sorrow, that such notions ever prevailed, and have overruled them. Precedents in matters of practice, though not to be disregarded, cannot be heldsacred like rules of property. The immense business of courts, ’with an increased and increasing number of. writs of errors, and the skill of clerks not increasing in the same proportion, renders a relaxation from sti'ict forms' every day more necessary, while'an adherence to them would be an impediment to justice, and ruinous to the suitoi’s. The rule of the District Court is intended to meet, and well calculated to meet some of the evils. This case in particular, falls within its very xvords, and upon that rule of court is^the present decision made. Its adoption is recommended *34 in all the judicial districts where it has not already obtained, and so far from its clashing with the decision in Brown v. Barnett, it is founded on that very decision ; substituting general directions to pro'thonotaries to join the issue to the word issue in the* clerical memoranda, which the court there said, would be equivalent to joining the issue. In Massachusetts, 9 Mass. Rep. 532, Whiting v. Cochran, it was determined, that after a party had appeared and defended an action before a jury under an issue tendered by the plaintiff, but not joined, the verdict and judgment would be supported on a writ of error; and in 18 Johns. 510, Lion v. Burlis, and Bank of New- York, an amendment was granted after verdict, and the court said the question is, how far we can allow amendments in furtherance of justice, as to mere formal mistakes, arising from clerical errors, when the substantial’right of one party would be promoted by the amendment, and the other party is not prejudiced otherwise than by depriving him of a formal objection. As yet we have not gone the length of making such amendments after verdict, but on full consideration, we see no objection to go that length. And then, after citing a number of recent English decisions, ■showing the progress of reformation in those courts, the court proceed thus : “ These cases are by no means authoritative, but show the liberality of courts in allowing amendments to. obviate objections arising from mistakes, from which the most eagle eyed practitioner is not free; and after verdict, where the defendant has not been taken by surprise, and where his whole defence has been gone into, or which he was prepared' to go into, to grant these amendments is a course of procedure which will advance justice, and get rid of technical objections which have no relation to the merits.” So that we see this is not a ruinous innovation, but a reformtion, now gradually proceeding in other courts where form is more strictly adhered to than in our courts, and where they do not consider removing an excrescence as disfiguring the admirable symetry of the law, and the just and beautiful proportions of special pleading.
The statutes for the amendment of the law have cut off many of those excrescences that in process of time had sprung out of the practical part of it. Blackstone, Vol. III. 411, observes, “that the real sulleness, or. affected timidity of judges was such, that every slip even of a syllable, or a letter was fatal to the pleader, and overturned his client’s cause. After verdict and judgment upon the merits, they were frequently reversed for slips of the pen, or misspelling, and justice was perpetually entangled in a net of mere technical jargon. The legislature has passed many statutes to remedy these opprobious niceties, and endeavours have of late been so well seconded by judges of a more liberal cast, that this unseemi ugly, degree of strictness is almost entirely eradicated, and will probably in a few years be no more remembered, than the learning of essoigns and defaults, or counter pleas of voucher are at *35 present. ’’ It is a delightful task to trace these gradual improvements, which without impairing any thing that is useful in the science of pleading, have lopped off all its rotten branches.
Judgment affirmed.